**E. F. Horner and Horace W. Horner, Appellants, v. William C. Bell, Appellee.**

**Gen. No. 10,294.**

Opinion filed March 14, 1949. Released for publication March 29, 1949.

JOHN R. SNIVELY, of Rockford, for appellants.

HALL & HALL and KNIGHT, HAYE & KEEGAN, all of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
The amended complaint in this case consists of five counts. The first and second counts alleged in substance that on January 21, 1941, and for a long time prior thereto, the plaintiff E. F. Horner was the owner of and lawfully possessed of a certain dwelling house and close in the Town of Roscoe, Winnebago county, Illinois and charged that on that day the defendant with force and arms broke and entered said dwelling

and close and ejected the plaintiff and his family therefrom and while so doing seized and converted to his own use certain described personal property of a stated value. The third count alleged that the defendant, with force and arms, on January 21, 1941, wrongfully seized and carried away the personal property described in the first count belonging to the plaintiff E. F. Horner and lost or converted the same to his own use. The fourth count alleged that the plaintiff Horace W. Horner was, on January 21, 1941, lawfully possessed of a certain room in the dwelling house of E. F. Horner in the town and county aforesaid as a tenant and charged that on said day the defendant, with force and arms, unlawfully broke and entered said room, ousted this plaintiff from the use thereof and while so doing unlawfully and wrongfully took from said room a rifle, two shotguns, bedding and clothing belonging to this plaintiff of the value of $200. Count five alleged that the defendant at said time and place wrongfully seized and carried away a rifle, two shotguns, clothing and bedding belonging to the plaintiff, Horace W. Horner and converted the same to his own use. Each count demanded judgment in the sum of $5,000.

The answer of the defendant admits that he seized certain personal property belonging to the plaintiffs but denied most of the other allegations of each count of the amended complaint. The answer alleged that at the time and place referred to in the amended complaint the defendant was the sheriff of Winnebago county and was acting under a writ of assistance issued to him by order of the circuit court of that county and avers that all he did was to dispossess the plaintiffs and restore possession to the person mentioned in said writ. The answer alleges that the property which the defendant seized and removed from the premises was stored in a storage house in Rockford at the request of a son of the plaintiff, E. F. Horner, and that the ware-

house receipt therefor was delivered to said son of this plaintiff who was agent of both plaintiffs. Attached to the answer was a copy of the writ of assistance referred to in the answer. The reply of the plaintiffs admitted that the defendant was the sheriff of Winnebago county and that on July 23, 1940, there had been issued a writ of assistance as alleged. The reply, however, denies that the defendant was acting under said writ on January 21, 1941, and avers that said writ had expired prior to January 21, 1941, and was of no force and effect at that time. In their reply the allegations of the answer in connnection with the storage of the property in a storage house in Rockford and the delivery of a warehouse receipt therefor to the son of E. F. Horner as agent for both plaintiffs, were denied.

A jury trial was had and at the conclusion of the evidence on behalf of the plaintiffs, the jury, in obedience to a peremptory instruction from the court, returned a verdict finding the defendant not guilty upon which judgment was rendered and the plaintiffs have perfected this appeal.

Upon the trial the plaintiff, E. F. Horner, testified that he was sixty-five years of age and the other plaintiff, Horace W. Horner, was his son and thirty-six years of age; that he, E. F. Horner, had been a resident of Winnebago county for forty-eight years and was a farmer, gardner and odd jobber; that on January 21, 1941, he resided in a two story, eight room, tile house on River street in Roscoe and had resided there for eight years; that there were eight acres of land adjacent thereto; that the dwelling had two outside doors, a front door and a back door, both equipped with cylinder locks and which opened with the same key; that his son, Horace W. Horner and one Raymond Radisky lived with him; that Horace occupied the front room and had therein a bed, mattress, bureaus and a dresser; that on January 21, 1941, he left his home about a quarter till eleven o'clock that morning

and locked both outside doors; that he went to Don Bell's filling station and was in the car of John Newhouse when he saw deputy sheriff, William E. Bell at the Don Fry oil station which was on River street in Roscoe and approximately one thousand feet from the house in which he lived; that Bell wanted this witness to go with him to his home but Horner refused and went with John Newhouse in the Newhouse car to drive a well. This witness further testified that Bell did not read any paper to him or hand him any paper or document and that he, Horner, returned to his home shortly after six o'clock but was prevented from entering by the deputy sheriff who told him he could not enter until a court order was issued; that Horner then inquired about his furniture and other personal property and the furniture of his son and was told by the deputy sheriff that it had been moved to Rockford. This witness further testified that he was the owner of the various articles of household furniture and personal property as set forth in the complaint; that its fair, cash market value was $800 and that it had never been returned to him and that he did not know what became of it. Counsel for plaintiffs then offered to prove by this witness that the dwelling house in which he was living on January 21, 1941, and from which he had been evicted was not located upon the real estate described in the writ of assistance referred to and made a part of the answer of the defendant but that said dwelling in which he lived was located south of the premises described in said writ of assistance. The trial court sustained an objection to this testimony and denied this offer of proof.

Thereupon counsel for plaintiffs called Wm. C. Bell, the defendant, as an adverse witness for examination under section sixty of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060]. The defendant testified that he was the sheriff of Winnebago county in January 1941, and that

his son, William E. Bell and Emil W. Heideman were serving as his deputies on January 21, 1941, and that he directed these deputies to go to the home of the plaintiff, E. F. Horner in Roscoe; that he, the witness, did not go and didn't know whether his deputies removed from plaintiffs' dwelling house the articles of personal property and goods as testified to by the plaintiff and did not know whether any of the articles had been returned to the plaintiff or not; that he, the sheriff, had been told they were removed to the Bartlett warehouse in Rockford; that he had never served any notice upon E. F. Horner to surrender possession of the dwelling house in which Horner resided and did not know what became of a ten gauge shotgun that was removed from the Horner home. This was all the evidence elicited from this witness by counsel for the plaintiffs.

Following the conclusion of the examination of this witness by plaintiffs' counsel, the attorney representing the defendant had a writ of assistance identified as ''Defendant, Wm. C. Bell's exhibit 1'' and requested the witness to look at this exhibit and asked him to state whether or not he directed his deputies to go out to the Horner home at Roscoe by reason of and under the writ of assistance which he had had identified as ''Defendant Bell's Exhibit one.'' Over the specific objection of counsel for the plaintiff that this was not proper examination and that nothing had been asked the witness in connection with any paper or instrument, the court permitted the witness to answer that he gave this writ of assistance to his son with instructions to serve it and to take with him proper deputies to serve it. Thereupon counsel for defendant said: ''I offer defendant's exhibit one on cross examination. I suppose under section 60 or redirect. I don't know just what to classify it. I don't know whether any of us do or not, but whatever the classification I offer defendant's exhibit one in evidence and ask permission

to read it to the jury." Counsel for the plaintiffs objected to it on the ground that it was irrelevant and incompetent. The objection was overruled and defendant's exhibit one was admitted in evidence, the court stating that it might be read to the jury. Counsel for the plaintiffs then inquired of the witness whether an indemnity bond had been furnished him, to which an objection was made and sustained and the witness was thereupon excused and plaintiffs rested their case.

Defendant's exhibit one was a writ of assistance directed to the sheriff of Winnebago county and purports to have been issued by the clerk of the circuit court. It recites that according to a decree in a cause pending in the circuit court wherein the Second National Bank of Beloit, Wisconsin, was plaintiff and E. F. Horner defendant, the said E. F. Horner was decreed to deliver up possession of a certain tract of land, described in the writ, to B. P. Eldred; that Horner had refused to obey said decree and that on March 18, 1940, notice was served on Horner that application would be made for a writ of assistance and that the application was heard on July 23, 1940. The writ is dated July 23, 1940, and its command is to immediately go upon the described premises and remove E. F. Horner and his tenants therefrom and place B. P. Eldred in possession thereof. The return is that the sheriff duly served the writ on January 21, 1941, by evicting E. F. Horner from the within described premises.

In *Combs v. Younge,* 281 Ill. App. 339 this court cited the case of *O'Day v. Meyers,* 147 Wis. 549, 133 N. W. 605 and quoted therefrom as follows: (p. 346): "Where a party is properly called under the statute for cross examination, his counsel has no right to re-examine him at the close of such cross examination. The statute contemplates no re-examination; and if one were allowed it would permit the adverse party to prove his case or at least a portion thereof, as a

part of the opponents case.'' We then quoted from a subsequent Wisconsin case (*Guse v. Power & Mining Machinery Co.*, 151 Wis. 400, 139 N. W. 195) where that court said: ''The trial court accepted too literally the language of the opinion of this court in *O'Day v. Meyers*, 147 Wis. 549 and when one of the employees of the defendant was called by the plaintiff as an adverse witness . . . and examined by plaintiff's counsel, the court refused to permit any re-examination by defendant's counsel, apparently holding that if the latter desired the testimony of such witness he must call his witness as his own witness when his time came to put in evidence. This was too strict. Under such circumstances the defendant has a right to re-examine such witness immediately after the examination by plaintiff's counsel, as to all matters tending to explain or qualify the testimony already given, but not as to new matters not brought out by plaintiff's counsel and constituting part of the defendant's defense . . . . The scope of such re-examination is largely in the discretion of the trial judge, but it should not be so extended in any case as to interject the defense into the plaintiff's case at this stage of the hearing.'' In the *Combs* case we adopted the construction of section sixty of our Practice Act which the courts of Wisconsin had followed in construing the provisions of a similar Wisconsin statute. In the instant case the defendant, when called by plaintiffs for examination under this section of our Practice Act did not become a witness for the plaintiffs in the true sense of that term, and under the authorities counsel for defendant had no right to cross examine him over the objection of counsel for plaintiffs. Furthermore it is never permissible to put in ones own case on cross-examination. The answer of the defendant set forth this writ of assistance as an affirmative defense but counsel for defendant offered it and the court admitted it in evidence before plaintiffs had rested their case in chief. The

orderly procedure of a trial of an action at law does not sanction such practice.

Counsel for plaintiffs seem to have anticipated this defense and while he was engaged in making out his case in the first instance he attempted to prove that the dwelling occupied by the plaintiffs was not located upon the premises described in this writ of assistance. A plaintiff is not obligated to thus meet an affirmative defense nor is he required to introduce in evidence any facts or documents which are strictly matters of defense. At the time this offer of proof was made the trial court correctly sustained an objection thereto.

The validity of this writ of assistance need not be determined upon this record but inasmuch as the judgment must be reversed and the cause remanded it may not be amiss to say that our Chancery Act (Ill. Rev. Stat. 1947, ch. 22, par. 42 [Jones Ill. Stats. Ann. 106.06]) provides that the court making a decree may enforce the same by causing possession of real and personal estate to be delivered to the party entitled thereto and by the exercise of such other powers as pertain to courts of chancery and which may be necessary for the attainment of justice. It is said that a writ of assistance performs the same office in a suit in equity as an execution in an action at law being nothing more than the process by which a court of equity finally carries its decree into effect. (2 R. C. L. 726, 727.) And while a writ of assistance performs the same office as an execution it does not follow that our statutory provision (Ill. Rev. Stat. 1947, ch. 77, par. 8 [Jones Ill. Stats. Ann. 107.158]) making an execution returnable in ninety days, applies to a writ of assistance.

Under the authorities it is the duty of the sheriff to execute a writ of assistance, at the earliest possible moment after he receives it and in some jurisdictions, by statutory enactment, a writ of assistance

loses its force after one year from the teste. (2 R. C. L. 738.) There is no such provision in our statute and in the instant case it may be noted that it is not the party for whose benefit the writ was issued that is complaining of the delay in executing the writ.

For the error in the reception of evidence upon the trial of the cause and in giving the peremptory instruction to the jury at the close of the evidence offered on behalf of the plaintiffs the judgment appealed from is reversed and this cause is remanded to the circuit court of Winnebago county for a new trial.

*Reversed and remanded.*